**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**

| | |
|---|---|
| HCL AMERICA INC., HCL TECHNOLOGIES LIMITED, and HCL TECHNOLOGIES CORPORATE SERVICES LTD.<br><br><br>Plaintiffs,<br><br><br>vs.<br><br><br>AMERICAN TELECONFERENCING SERVICES, LTD., d/b/a PREMIERE GLOBAL SERVICES,<br><br><br>Defendant. | CASE NO.: 1:22-CV-00139-TWT |

**PLAINTIFFS' RESPONSE TO DEFENDANT'S STATEMENT OF
ADDITIONAL MATERIAL FACTS PURSUANT TO LOCAL RULE 56.1**

Plaintiffs HCL America Inc., HCL Technologies Limited, and HCL Technologies Corporate Services Ltd. ("Plaintiffs" or "HCL") hereby submit this Response to Defendant's Statement of Additional Material Facts in connection with their Motion for Summary Judgment, and in opposition to Defendant American Teleconferencing Services, Ltd., d/b/a Premiere Global Services's ("PGi") Statement of Additional Material Facts Presenting A Genuine Issue for Trial, pursuant to Local Rule 56.1.

1.     SOW No. 8 does not contain the entirety of the Parties' agreement regarding the transfer of the GMC product's development and related operational and support services from PGi to HCL. Declaration of Michael Havener ("Havener Dec.") at ¶¶ 5-6; see also Exhibits A-E thereto.

**RESPONSE:**     HCL disputes and objects to this statement as relying on evidence which is improper and should be stricken or disregarded for the reasons outlined in HCL's reply brief, and because the fact is not material for purposes of avoiding summary judgment. LR 56.1(b)(3)(a) and (c).  First, the evidence comes from the Declaration of Michael Havener, whom PGi refused to produce for his deposition after HCL noticed, claiming he would not cooperate, only for Mr. Havener to

conduct an about-face and cooperate with PGi at the eleventh hour, to produce a wholly conclusory Declaration in opposition to HCL's Motion for Summary Judgment, based on no competent evidence in the record. This Declaration and its exhibits should be stricken or disregarded for the reasons outlined in HCL's reply brief. Second, even if this evidence is considered, it does not pose a genuine issue of material fact. Exhibit A is unsigned and therefore not binding on HCL, moreover even if it was signed, PGi fails to identify any provision which would refute HCL's arguments contained in its moving papers. Exhibits B and D contain no context whatsoever and it is not clear where they stem from or what their importance is. Exhibits C and E are similarly unsigned and have no context or seeming importance.

Since HCL has not conceded that it was financially responsible for third-party software under SOW No. 8, but agreed to deduct these costs as authenticated by PGi's Rule 30(b)(6) corporate representative at his deposition for purposes of obtaining summary judgment on PGi's counterclaims, this fact is not material for purposes of avoiding summary judgment. *See* Eric Head Deposition Transcript ("Head Dep. Tr.") 67:24 – 68:17 and Moving Declaration of Patrick Papalia ("Papalia Decl.") Exhibit M.

2.     SOW No. 8 indicated that the Parties would enter into subsequent

agreements to detail what additional responsibilities and obligations could, and would, become part of the Parties' agreement. Doc. No. 26-5 at 3-6, 12, and 28-32.[1]

**RESPONSE:**    HCL disputes and objects to this statement because it is not material for purposes of avoiding summary judgment. LR 56.1(b)(3)(c).   The statement does not pose a genuine issue of material fact.

3.    SOW No. 8 states that it merely "sets forth the high-level descriptions of the services to be provided by Partner to PGi and the parties agree to develop and execute additional schedules to this SOW within a period of time after the Effective Date to further document the details of the services and the parties' responsibilities." Doc. No. 26-5 at 2.

**RESPONSE:**    HCL objects to the "merely" language as argumentative, the SOW speaks for itself, and because this fact is not material for purposes of avoiding summary judgment. LR 56.1(b)(3)(a) and (c).

4.    These later-executed schedules "set forth the details of the specific Services to be performed by Partner and any responsibilities that PGi may have, if any." Doc. No. 26-5 at 3; see also Havener Decl. at ¶¶ 5-6.

---

[1] There is no 28-32 on the ECF docket.

**RESPONSE:**      HCL disputes and objects to this statement as relying on evidence

which is improper and should be stricken or disregarded for the reasons outlined in

HCL's reply brief, and because the fact is not material for purposes of avoiding

summary judgment. LR 56.1(b)(3)(a) and (c).  HCL incorporates by reference its

objection to the Havener Declaration contained in its response to PGi's Statement of

Additional Material Facts Presenting a Genuine Issue for Trial ("SMF") # 1.

Moreover, this statement does not pose a genuine issue of material fact.

5.      SOW No. 8 stated that expenses for "third-party software, open source

or proprietary, bundled with the PGi GMC Product [were to] be borne by PGi." Doc.

No. 26-5 at 8.

**RESPONSE:**      Undisputed and the SOW speaks for itself, but HCL objects to

its inclusion as this fact is not material for purposes of avoiding summary

judgment. LR 56.1(b)(3)(c).

6.      Software bundled with the GMC product was in turn to be accounted

for in determining PGi's net revenue therefrom and calculation of Plaintiffs'

subsequent revenue share payment. See Doc. No. 26-5 at 11. Specifically, SOW No.

8 stated as follows:

> To the extent that there is any other software, hardware or services,
> which any of the PGi GMC Product may be bundled with, incorporated

5

into, or pre-loaded on, then in that case the Net Invoiced Revenue for the PGi GMC Product shall be calculated by taking the list price of the component PGi GMC Product divided by the list price of sum of the list price of all of the components of the bundle, multiplied by the Net Invoiced Revenue associated with the bundle (list prices to be determined at the time of first customer shipment of the bundle).

Id.

**RESPONSE:**        HCL disputes and objects to this statement as mischaracterizing the plain language of SOW No. 8, which HCL does not dispute, and because the fact is not material for purposes of avoiding summary judgment. LR 56.1(b)(3)(a) and (c).  Because PGi's Rule 30(b)(6) representative, Eric Head, testified on behalf of PGi that he personally approved all of HCL's GMC Product Revenue share invoices, and that PGi never disputed any of HCL's invoices during the time provided by the contract, this fact is not material for purposes of avoiding summary judgment. Head Dep. Tr. 32:22 – 35:11 and Papalia Decl. Exhibit F; *see also* Papalia Decl., Exhibit C, Section I (4), page 11 and Head Dep. Tr. 24:13-22.

7.      SOW No. 8 further states that "[Plaintiffs] shall be responsible for providing, and shall be financially and operationally responsible for, the facilities, its personnel, software, equipment, materials, technical knowledge, expertise and other resources necessary to provide the Services in accordance with the terms of this Agreement, unless otherwise set forth herein." Doc. No. 26-5 at 3.

6

**RESPONSE:**      Undisputed, but HCL objects to its inclusion as this fact is not material for purposes of avoiding summary judgment. LR 56.1(b)(3)(c).

8.    The Parties agreed to transition certain software licenses and tools—along with their respective costs—that were not bundled with the GMC product itself but that Plaintiffs would nevertheless need to use in order to provide operational, evaluative, and customer and product support services as required by the contract. Havener Dec. at ¶¶ 5-15; see also Exhibits A-E thereto.

**RESPONSE:**      HCL disputes and objects to this statement as relying on evidence which is improper and should be stricken or disregarded for the reasons outlined in HCL's reply brief, and because the fact is not material for purposes of avoiding summary judgment. LR 56.1(b)(3)(a) and (c).  HCL incorporates by reference its objection to the Havener Declaration contained in its response to PGi's SMF # 1.

Second, even if this evidence is considered, it does not pose a genuine issue of material fact.  Since HCL has not conceded that it was financially responsible for third-party software under SOW No. 8, but agreed to deduct these costs as authenticated by PGi's Rule 30(b)(6) corporate representative at his deposition for purposes of obtaining summary judgment on PGi's counterclaims, PGi's SMF # 8 is

not material for purposes of avoiding summary judgment. Head Dep. Tr. 67:24 – 68:17 and Papalia Decl. Exhibit M.

9.      Plaintiffs agreed to reimburse PGi for their use of Totango, a type of user tracking and evaluation software that Plaintiffs were to use as the "Customer Success Manager" in supporting users of the GMC product. Havener Dec. at ¶¶ 9-11, Exhibit A at 6; see also Deposition of Adrian Canty ("Canty Dep. Tr."), Tr. 134:8-135:8.

**RESPONSE:**      HCL disputes and objects to this statement as relying on evidence which is improper and should be stricken or disregarded for the reasons outlined in HCL's reply brief, because the evidence cited does not support the purported fact, and because even if the evidence did support the purported fact, the fact is not material for purposes of avoiding summary judgment. LR 56.1(b)(3)(a) - (c).  HCL incorporates by reference its objection to the Havener Declaration contained in its response to PGi's SMF # 1.

Second, this cited evidence does not support the proposition stated, as Eric Head, on behalf of PGi, testified that all third-party software programs contained on PGi's invoices to HCL, including Totango, were pre-existing and bundled with the GMC Product, and SOW No. 8 provides that PGi is financially responsible to pay

8

for third-party software programs pre-existing and bundled with the GMC Product. Head Dep. Tr. 26:11 – 30:2, Papalia Decl. Exhibit C, Section E, page 7 and Exhibit K.   Testimony from another employee, Adrian Canty, should not be used to contradict the position from PGi's official Rule 30(b)(6) corporate representative.

Finally, even if this evidence is considered and taken as true, it does not pose a genuine issue of material fact.  HCL incorporates by reference the fact that it has not conceded, but agreed to deduct for summary judgment purposes, all PGi's claimed third-party software costs as elaborated in its response ot PGi's SMF # 8.

10.    Pursuant to the Parties' Customer Success Management Schedule, PGi paid the Totango license fees which in turn were to be "charged back" to Plaintiffs. Havener Dec. at ¶¶ 9-11, Exhibit A at 43; Canty Dep. Tr. 135:18-25.

**RESPONSE:**       HCL disputes and objects to this statement as relying on evidence which is improper and should be stricken or disregarded for the reasons outlined in HCL's reply brief, because the evidence cited does not support the purported fact, and because even if the evidence did support the purported fact, the fact is not material for purposes of avoiding summary judgment. LR 56.1(b)(3)(a) - (c).  *See* HCL's response to PGi's SMF #9 for supporting reasons.

11.     PGi incurred expenses of at least $54,675 for Plaintiffs' use of Totango in 2021 prior to Plaintiffs' termination of the contract, but Plaintiffs never reimbursed PGi for such expenses. Declaration of Eric Head ("Head Dec.") at ¶ 17; see also Deposition of Eric Head ("Head Dep."), Tr. 13:12-22, 14:19-16:4.

**RESPONSE:**     HCL disputes and objects to this statement as relying on evidence which is improper and should be stricken or disregarded for the reasons outlined in HCL's reply brief, because the evidence cited does not support the purported fact, and because even if the evidence did support the purported fact, the fact is not material for purposes of avoiding summary judgment. LR 56.1(b)(3)(a) - (c).  First, the evidence comes from the Declaration of Eric Head, which is flatly in contradiction with the Deposition of Eric Head, for reasons explained in HCL's reply brief.  Simply stated, Eric Head already authenticated the total amount of contractual offsets which PGi is seeking in this matter, through his deposition testimony, and this authentication is unexplainedly at odds with his Declaration. Head Dep. Tr. 67:24 – 68:17 and Papalia Decl. Exhibit M. Because the contradiction is clear and unexplained, this alleged cost must be disregarded pursuant to the sham affidavit rule outlined in HCL's reply brief.

Additionally, even if the cited evidence is taken as true, it fails to raise a genuine issue of material fact.  HCL incorporates by reference the fact that Eric Head, on behalf of PGi, testified that all third-party software programs contained on PGi's invoices to HCL, including Totango, were pre-existing and bundled with the GMC Product, and SOW No. 8 provides that PGi is financially responsible to pay for third-party software programs pre-existing and bundled with the GMC Product, contained in its response to PGi's SMF #9.  HCL further incorporates by reference the fact that it has not conceded, but agreed to deduct for summary judgment purposes, all PGi's claimed third-party software costs as elaborated in its response ot PGi's SMF # 8.

12.    Two additional tools transitioned to Plaintiffs' use were MacStadium and Temasys, which were both used by Plaintiffs to manage cloud operations for the GMC product. Havener Dec. at ¶ 12.

**RESPONSE:**    HCL disputes and objects to this statement as relying on evidence which is improper and should be stricken or disregarded for the reasons outlined in HCL's reply brief, and because the fact is not material for purposes of avoiding summary judgment. LR 56.1(b)(3)(a) and (c). HCL incorporates by reference its

objection to the Havener Declaration contained in its response to PGi's SMF # 1. HCL further incorporates by reference its response to PGi's SMF # 11.

13.     MacStadium was software that enabled the GMC Product interface to work on Mac hardware and Temasys was software used to interface between PGI's AWS infrastructure and the GMC Product interface. Id.

**RESPONSE:**     HCL disputes and objects to this statement as relying on evidence which is improper and should be stricken or disregarded for the reasons outlined in HCL's reply brief, and because the fact is not material for purposes of avoiding summary judgment. LR 56.1(b)(3)(a) and (c). *See* HCL's response to PGi's SMF #12 for supporting reasons.

14.     Neither MacStadium or Temasys were third-party software bundled with, incorporated into, the GMC product. Havener Dec. at ¶ 13.

**RESPONSE:**     HCL disputes and objects to this statement as relying on evidence which is improper and should be stricken or disregarded for the reasons outlined in HCL's reply brief, because the evidence cited does not support the purported fact, and because even if the evidence did support the purported fact, the fact is not

material for purposes of avoiding summary judgment. LR 56.1(b)(3)(a) - (c).  *See* HCL's response to PGi's SMF #12 for supporting reasons.

15.    The Parties agreed that their costs, paid by PGi, would be charged back to Plaintiffs for reimbursement. Havener Dec. at ¶ 14, Exhibit B at 2.

HCL disputes and objects to this statement as relying on evidence which is improper and should be stricken or disregarded for the reasons outlined in HCL's reply brief, because the evidence cited does not support the purported fact, and because even if the evidence did support the purported fact, the fact is not material for purposes of avoiding summary judgment. LR 56.1(b)(3)(a) - (c).  *See* HCL's response to PGi's SMF #12 for supporting reasons.

16.    In 2021, PGi incurred expenses of at least $18,000 for Plaintiffs' use of MacStadium and $42,000 for Temasys, neither of which were ever reimbursed by Plaintiffs. Head Dec. at ¶ 17.

**RESPONSE:**      HCL disputes and objects to this statement as relying on evidence which is improper and should be stricken or disregarded for the reasons outlined in HCL's reply brief, because the evidence cited does not support the purported fact, and because even if the evidence did support the purported fact, the fact is not

material for purposes of avoiding summary judgment. LR 56.1(b)(3)(a) - (c).  *See* HCL's response to PGi's SMF #12 for supporting reasons.

17.     Call Stats was software used to monitor the Network Operations Center related to the GMC product. Havener Dec. at ¶ 15. Specifically, Plaintiffs used this software to monitor video performance and its interaction with the audio connection to PGi's network. Id.

**RESPONSE:**     HCL disputes and objects to this statement as relying on evidence which is improper and should be stricken or disregarded for the reasons outlined in HCL's reply brief, and because the fact is not material for purposes of avoiding summary judgment. LR 56.1(b)(3)(a) and (c). *See* HCL's response to PGi's SMF #12 for supporting reasons.

18.     Call Stats was another back-end tool to be used by Plaintiffs and was not a part of the GMC Product itself. Havener Dec. at ¶ 15.

**RESPONSE:**     HCL disputes and objects to this statement as relying on evidence which is improper and should be stricken or disregarded for the reasons outlined in HCL's reply brief, because the evidence cited does not support the purported fact, and because even if the evidence did support the purported fact, the fact is not

material for purposes of avoiding summary judgment. LR 56.1(b)(3)(a) - (c).   *See* HCL's response to PGi's SMF #12 for supporting reasons.

19.   In 2021, PGi incurred expenses of at least $160,752 for Call Stats which were never reimbursed by Plaintiffs. Head Dec. at ¶ 17.

**RESPONSE:**   HCL disputes and objects to this statement as relying on evidence which is improper and should be stricken or disregarded for the reasons outlined in HCL's reply brief, because the evidence cited does not support the purported fact, and because even if the evidence did support the purported fact, the fact is not material for purposes of avoiding summary judgment. LR 56.1(b)(3)(a) - (c).   *See* HCL's response to PGi's SMF #12 for supporting reasons.

20.   In addition to the amount HCL has admitted it owes PGi for its Amazon Web Services ("AWS") expenses, HCL further owes to PGi at least $275,427 as payment for its reimbursable operating expenses, not including any interest that may have accrued thereon. See Head Dec. at ¶ 17.

**RESPONSE:**   HCL disputes and objects to this statement as relying on evidence which is improper and should be stricken or disregarded for the reasons outlined in HCL's reply brief, because the evidence cited does not support the purported fact, and because even if the evidence did support the purported fact, the fact is not

material for purposes of avoiding summary judgment. LR 56.1(b)(3)(a) - (c). *See*
HCL's response to PGi's SMF #12 for supporting reasons, which pertained to third-
party software costs, but the logic is just as applicable to the AWS costs, which were
also authenticated by Eric Head in the same record citations.

21.     Plaintiffs never developed a stable, competitive, and successful
product, which as a result caused PGi to lose market share and customers to
competing video-conferencing software companies. Head Dep., Tr. 43:8-18; Canty
Dep. Tr. 42:12-43:2; Havener Dec. at ¶ 19-21.

**RESPONSE:**       HCL disputes and objects to this statement as relying on evidence
which is improper and should be stricken or disregarded for the reasons outlined in
HCL's reply brief, because the evidence cited does not support the purported fact,
and because even if the evidence did support the purported fact, the fact is not
material for purposes of avoiding summary judgment. LR 56.1(b)(3)(a) - (c).  HCL
incorporates by reference its objection to the Havener Declaration contained in its
response to PGi's SMF # 1.

Additionally, Adrian Canty testified in his deposition that "everything that the
HCL team did was at the request of PGi," that "the work that HCL did for PGi was
a success," and that he was "always satisfied" with HCL's work through HCL's

termination of SOW No. 8. *See* Canty Dep. Tr. 17:11 – 18:6; 37:11 – 38:6, 55:21-23; 58:5-11; 62:3-12; 112:3-7; 115:16-19 & Papalia Decl. Exhibit O.  Record evidence further indicates that Mr. Canty gave HCL top reviews including "On-time delivery" (very first question) and "Delivered Right the first time" (second question) for both of which Mr. Canty gave HCL a perfect score (7 of 7). *See* Papalia Decl. Exhibit O. This undisputed evidence cannot be contradicted by wholly conclusory statements having no basis in the record, including a PGi's failure to produce even a single email from PGi to HCL to the effect that HCL never developed a stable, competitive, and successful product, or raising any issues with HCL's work quality whatsoever.

Moreover, the PSA contained a provision stating that if PGi had any issues with HCL's work quality, it had 15 business days to raise these issues to HCL, and Eric Head, on behalf of PGi, confirmed that PGi never raised any such issues to PGi to his knowledge (nor did PGi produce any documents to this effect). *See* Moving Declaration of Singaravelou Rajaram ("Rajaram Decl."), Exhibit A, Section 13.2.1, page 10;  Head Dep. Tr. 45:19 – 46:21.

Third, the Eric Head deposition transcript excerpt cited by PGi is inadmissible hearsay, as it omits the key next question, in which Eric Head, on behalf of PGi,

17

expressly admits his PGi cited statement was not based on his personal knowledge.

*See* Head Dep. Tr. 44:4-10 (emphasis added).  Specifically, Mr. Head testified:

> Q. I'm asking you during the time that you were there from 2020 to 2021, did you learn of anything where HCL was being called upon or told we have problem with your services?
>
> A. **I mean, I didn't hear of anything like that**, but I wasn't involved in the revenue at that time either, so.

Accordingly, because the Eric Head deposition transcript excerpt which PGi references in this "fact" is inadmissible hearsay, admittedly not obtained by Eric Head's personal knowledge, it cannot serve to create a genuine issue of material fact sufficient to avoid summary judgment.  Not only did HCL's moving papers demonstrate that no genuine issue of material fact existed as to the services that HCL performed (indeed, Eric Head testified that the only reason PGi did not pay HCL was it did not have the finances), but the cited "fact" in PGi's SMF # 21 is not sufficient to raise a genuine issue of material fact for purposes of defeating summary judgment, for the reasons explained.

22.    Under SOW No. 8, Plaintiffs were obligated to "manage and provide all software development, break-fix, and maintenance services for the PGi GMC Product," including feature enhancements, bug fixes, maintenance, and otherwise

"[m]anag[ing] and perform[ing] all other activities . . . as necessitated to meet demand from customers of the PGi." Doc No. 26-5 at 4.

**RESPONSE:**     Undisputed, but HCL objects to its inclusion as this fact, on its own, is not material for purposes of avoiding summary judgment. LR 56.1(b)(3)(c). HCL further notes that it has clearly explained how no issue of material fact exists as to its performance under SOW No. 8, and PGi has failed to meet its burden of pointing to record evidence sufficient to raise a genuine issue of material fact on this issue.

23.     Plaintiffs were further responsible under SOW No. 8 "for managing and successfully performing, completing, and delivering the Services [including product development], subject to the overall direction of PGi." Doc No. 26-5 at 3; see also Doc. No. 26-4 ("PSA") at 3-4 (§§ 3.2, 3.4) and 8 (§ 9.2).

**RESPONSE:**     Undisputed, but HCL objects to its inclusion as this fact is not material for purposes of avoiding summary judgment. LR 56.1(b)(3)(c).  *See* HCL's response to PGi's SMF # 22 for supporting reasons.

24.     SOW No. 8 further stated that "If any tasks, other than those expressly assigned to Partner pursuant to this SOW, are reasonably required for, and incidental to or inherent in, the proper performance and provision of the Services (regardless

19

of whether they are specifically described in this SOW), they shall be deemed to be implied by and included within the scope of the Services to the same extent and in the same manner as if specifically described, unless retained by PGi or its third party providers." Doc No. 26-5 at 3.

**RESPONSE:**     Undisputed, but HCL objects to its inclusion as this fact is not material for purposes of avoiding summary judgment. LR 56.1(b)(3)(c). *See* HCL's response to PGi's SMF # 22 for supporting reasons.

25.     After Plaintiffs took over development of the GMC product it would intermittently crash and experienced stability issues. Havener Dec. at ¶ 19; see also Head Dep., Tr. 91:3-16.

**RESPONSE:**     HCL disputes and objects to this statement as relying on evidence which is improper and should be stricken or disregarded for the reasons outlined in HCL's reply brief, because the evidence cited does not support the purported fact, and because even if the evidence did support the purported fact, the fact is not material for purposes of avoiding summary judgment. LR 56.1(b)(3)(a) - (c). *See* HCL's response to PGi's SMF # 21 for supporting reasons.

Additionally, HCL notes that the Eric Head deposition transcript excerpt cited by PGi is inadmissible hearsay, as **once again**, PGi omits the key next question, in

which Eric Head, on behalf of PGi, expressly admits his cited statement in PGi's SMF # 25 was not based on his personal knowledge. *See* Head Dep. Tr. 91:17-21 (emphasis added). Specifically, Mr. Head testified:

> Q. So other than him [Michael Havener] making statements, as a corporate representative of PGi, do you have anything to validate any of those statements that he made as being correct or accurate or reflective of what occurred?
>
> A**. I do not.**

26. Plaintiffs also never finalized their development of a private chat function nor were they able to expand GMC's video conferencing capabilities beyond 16 webcams while competitors could accommodate many more. Canty Dep. Tr. 33:9-34:3; 45:4-25; Havener Dec. at ¶ 20.

**RESPONSE:** HCL disputes and objects to this statement as relying on evidence which is improper and should be stricken or disregarded for the reasons outlined in HCL's reply brief, because the evidence cited does not support the purported fact, and because even if the evidence did support the purported fact, the fact is not material for purposes of avoiding summary judgment. LR 56.1(b)(3)(a) - (c). *See* HCL's response to PGi's SMF # 21 for supporting reasons.

27. Plaintiffs were also responsible for updating and redeveloping GMC's interface but never delivered. Canty Dep. Tr. 49:2-22; Havener Dec. at ¶ 20.

**RESPONSE:**        HCL disputes and objects to this statement as relying on evidence which is improper and should be stricken or disregarded for the reasons outlined in HCL's reply brief, because the evidence cited does not support the purported fact, and because even if the evidence did support the purported fact, the fact is not material for purposes of avoiding summary judgment. LR 56.1(b)(3)(a) - (c). *See* HCL's response to PGi's SMF # 21 for supporting reasons.

28.     These features were requested by PGi, but Plaintiffs ultimately did not, or could not, provide them. Canty Dep. Tr. 38:4-17; Havener Dec. at ¶ 21.

**RESPONSE:**        HCL disputes and objects to this statement as relying on evidence which is improper and should be stricken or disregarded for the reasons outlined in HCL's reply brief, because the evidence cited does not support the purported fact, and because even if the evidence did support the purported fact, the fact is not material for purposes of avoiding summary judgment. LR 56.1(b)(3)(a) - (c).  *See* HCL's response to PGi's SMF # 21 for supporting reasons.

29.     These development failures caused, at least in part, PGi to continue to lose market share and revenue. Canty Dep. Tr. 42:12-43:2; Havener Dec. at ¶ 22.

**RESPONSE:**        HCL disputes and objects to this statement as relying on evidence which is improper and should be stricken or disregarded for the reasons outlined in

22

HCL's reply brief, because the evidence cited does not support the purported fact, and because even if the evidence did support the purported fact, the fact is not material for purposes of avoiding summary judgment. LR 56.1(b)(3)(a) - (c). *See* HCL's response to PGi's SMF # 21 for supporting reasons.

30.     In 2021, the year in which Plaintiffs took over development of the GMC product, PGi experienced a net operating loss of almost $100 million more than the year prior. Head Dep., Tr. 70:14-72:9.

**RESPONSE:**     HCL disputes and objects to this statement because the fact is not material for purposes of avoiding summary judgment. LR 56.1(b)(3)(a) - (c).

PGi attempts to use this fact to create the improper inference, unsupported by any evidence in the record produced during discovery, that its alleged 2021 net operating loss was attributable to HCL's breach of SOW No. 8.  PGi's inclusion of SMF # 30 is willfully disingenuous and a thinly-veiled attempt to mislead this Court.

First, there no competent evidence whatsoever about HCL's alleged breach, as PGi produced no written documents in discovery to corroborate this allegation and the record evidence HCL provided in its moving papers demonstrated that PGi was pleased on every level with HCL's services. *See* HCL's response to PGi's SMF #s 11 and 21.  With no sufficient factual predicate, PGi's net operating loss in 2021

cannot serve as a genuine issue of material fact that would defeat HCL's summary judgment motion.

Second, PGi's 30(b)(6) corporate representative, on behalf of PGi, testified that PGi was "getting probably pretty [financially] distressed in 2019" and that "COVID helped" PGi's 2020 finances by providing "unprecedented revenues to the company during that time period." Head Dep., Tr. 48:21 – 49:9.  Mr. Head, on behalf of PGi, further testified as follows, which directly debunks PGi's SMF #30:

Q. So there was a substantial drop in revenue in 2021?

A. Right, yeah. Exactly, yep.

Q. And do you know why there was such a large drop in revenue?

A. This is where if you would look -- you know, look at 2029 -- or 2019, sorry, our -- **you know, our company has continued to decline**. **This is where I mentioned COVID kind of boosted us up, you know, <u>doubled sales from what they should have been</u>, so it gave us an artificial boost for 2020, you know. And 2021 kind of after, you know, everything -- you know, <u>everything came back to somewhat normal in 2021, that came back to what our real revenue run rate would look like</u>.**

Q. Okay. **So 2021 is reflective of what was going on in 2019?**

A. **Right.**

Q. And would the loss amount also be similar, $188 million loss in 2019?

A. Yeah.

Head Dep., Tr. 72:10 – 73:5

Accordingly, not only is PGi's unsupported inference against HCL improper, PGi's 30(b)(6) corporate representative directly admitted that the desired inference PGi wishes the Court to make to deny summary judgment is false. Accordingly, PGi's SMF # 30 is insufficient for PGi's burden to demonstrate a genuine issue of material fact exists.

31.    Plaintiffs also did not prepare the GMC product for "white labeling," which is a process by which PGi could provide an unbranded version of GMC to a major third-party (like a telecommunications carrier) who could, in turn, rebrand it as its own product and resell it. Head Dep., Tr. 89:20-90:10; Canty Dep. Tr. 40:12-19, 90:16-91:5. Havener Dec. at ¶ 23.

**RESPONSE:**       HCL disputes and objects to this statement as relying on evidence which is improper and should be stricken or disregarded for the reasons outlined in HCL's reply brief, because the evidence cited does not support the purported fact, and because even if the evidence did support the purported fact, the fact is not material for purposes of avoiding summary judgment. LR 56.1(b)(3)(a) - (c). *See* HCL's response to PGi's SMF # 21 for supporting reasons.

Additionally, HCL notes that the Eric Head deposition transcript excerpt cited by PGi is inadmissible hearsay, as **<u>once again</u>**, PGi omits the key next questions, in which Eric Head, on behalf of PGi, expressly admits his PGi cited exercpt was not based on his personal knowledge. *See* Head Dep. Tr. 90:11-25 (emphasis added). Specifically, Mr. Head testified:

Q. Is there any documentation that shows that this was even made an issue with HCL at any time?

A. **Not that I've seen**. Again, this is just --

Q. Okay.

A. -- from what Mike said.

Q. Okay. And did he tell you when he formulated these opinions? Was it after all the money was due when breach notices went out or at some other time?

A. He didn't -- He didn't state at what time he came to these conclusions.

Q. Okay. And based on your review as a corporate representative, **you don't have anything to substantiate or support what he's saying other than what he told you**.

A. **Right**.

32.     Preparing the GMC product for white labeling was a "key objective" for which Plaintiffs were responsible. Doc. No. 26-5 at 9-10; <u>see also</u> Havener Dec. at ¶ 23.

**RESPONSE:** HCL disputes and objects to this statement as relying on evidence which is improper and should be stricken or disregarded for the reasons outlined in HCL's reply brief, because the evidence cited does not support the purported fact, and because even if the evidence did support the purported fact, the fact is not material for purposes of avoiding summary judgment. LR 56.1(b)(3)(a) - (c). *See* HCL's response to PGi's SMF # 21 for supporting reasons.

33. Under SOW No. 8, Plaintiffs were to assume and transfer PGi's AWS account to their control. Doc. No. 26-5 at 5; Havener Dec. at ¶ 24. SOW No. 8 further states that "[Plaintiffs] will assume all AWS costs under this SOW going forward." Doc. No. 26-5 at 5.

**RESPONSE:** Undisputed, but HCL objects to its inclusion as this fact is not material for purposes of avoiding summary judgment. LR 56.1(b)(3)(c). HCL incorporates by reference its objection to the Havener Declaration contained in its response to PGi's SMF # 1, so HCL further objects on the grounds that PGi's SMF #33 utilizes objectionable evidence which should not be admitted. LR 56.1(b)(3)(a).

34. Upon transfer of the AWS account to their control, Plaintiffs were to be responsible for "fix[ing] underlying configuration issues within the AWS environment," "[m]anag[ing] . . . and maintain[ing] staging/pre-production

environments within AWS," and "[m]anaging and perform[ing] all other activities related to the AWS environments as necessitated to meet demand from customers of the PGi GMC Product." Doc. No. 26-5 at 5.

**RESPONSE:**      Undisputed, but HCL objects to its inclusion as this fact is not material for purposes of avoiding summary judgment. LR 56.1(b)(3)(c).

35.    Plaintiffs never transferred or assumed PGi's AWS account to their control. Head Dep., Tr. 112:4-15; Havener Dec. at ¶ 24.

**RESPONSE:**      HCL disputes and objects to this statement as relying on evidence which is improper and should be stricken or disregarded for the reasons outlined in HCL's reply brief, because the evidence cited does not support the purported fact, and because even if the evidence did support the purported fact, the fact is not material for purposes of avoiding summary judgment. LR 56.1(b)(3)(a) - (c).  HCL incorporates by reference its objection to the Havener Declaration contained in its response to PGi's SMF # 1.

Additionally, absolutely no admissible evidence was produced to show that HCL failed to transfer the AWS account to its control and/or the circumstances behind this.   Eric Head's cited testimony was admittedly largely based on

inadmissible hearsay evidence, and PGi failed to adequately explore the AWS issue in discovery. Head Dep. Tr. 112:16-20 & 113:3-10.[2]

Third, PGi omitted Eric Head's follow up testimony on the AWS issue, where, on behalf of PGi, Eric Head admitted that PGi incurred no additional alleged costs or damages associated with the AWS issue apart from the AWS invoices which PGi is seeking reimbursement in this action. Head Dep. Tr. 113:19 – 114:7. Since HCL has already agreed to deduct the AWS costs pursuant to SOW No. 8, as authenticated by PGi's Rule 30(b)(6) corporate representative at his deposition for purposes of obtaining summary judgment on PGi's counterclaims, this fact is not material for purposes of avoiding summary judgment. Head Dep. Tr. 67:24 – 68:17 and Papalia Decl. Exhibit M.

36.    PGi repeatedly raised its concerns about HCL's failures throughout the duration of the Parties' contractual relationship, which were verbally communicated in numerous meetings between HCL and PGi personnel. Havener Dec. at ¶ 25.

**RESPONSE:**    HCL disputes and objects to this statement as relying on evidence which is improper and should be stricken or disregarded for the reasons outlined in

---

[2] Had PGi properly conducted discovery on this issue it would have become immediately apparent that HCL did not breach SOW No. 8 in this regard.

29

HCL's reply brief, because the evidence cited does not support the purported fact, and because even if the evidence did support the purported fact, the fact is not material for purposes of avoiding summary judgment. LR 56.1(b)(3)(a) - (c).  *See* HCL's response to PGi's SMF # 21 for supporting reasons.

HCL further notes that the belated, improper, and wholly conclusory Havener Declaration, which PGi's SMF #36 wholly relies on (in contrast to the voluminous record evidence HCL cited to demonstrate there was no issue of material fact as to its performance under SOW No. 8), is foreclosed by PGi's undisputed failure to comply with PSA Section 13.2.1 regarding bringing any issues as to HCL's performance to HCL's attention within 15 days.

*/s/ Patrick Papalia*
Patrick Papalia

Dated: October 28, 2022
New York, New York